is for argument. Last case is 21-1026 Eastern Missouri United States versus Robert Hill. Your Honor, my name is Kevin Whiteley. Mr. Whiteley, initially to the court, we understand you're appointed under the Criminal Justice Act and the court appreciates your service. It's my pleasure, Your Honor, and I wouldn't have been able to do so without Ms. Becker's assistance. Mr. Hill was pro se below and he had standby counsel, but neither of those parties were able to provide me with the exhibits, so I'm very grateful to Ms. Becker's assistance. Well, that kind of cooperation helps the court a great deal. May it please the court, my name is Kevin Whiteley. I was appointed under the CJA to Mr. Hill was convicted of two counts. Count one was conspiracy to distribute controlled substance for which he received a sentence of 300 months and count two for unlawful possession of a firearm for which he received 120 months. Both sentences were concurrent. In the brief, he raises three issues. The first issue is the Batson challenge. The second is the abuse of discretion by the district judge in admitting expert testimony, and the third is the sufficiency of the evidence as to the unlawful possession of a firearm. For purposes of oral argument, I do not anticipate making any presentation to issues two and three. I'll answer or certainly answer any questions the court may have, but I would just normally submit issues two and three on the briefs. I would like to discuss the Batson challenge. I had one fact question on issue two, the dual role expert issue. Was Lieutenant Sullivan qualified as an expert? I would concede he was, your honor. Okay. So we had enough experience in the law. This is not entirely governed by Peeples then? I'm sorry, your honor? So it's not the case. If not, then Peeples is controlling precedent, but it's a little more complicated if the law enforcement officer has been qualified as an expert. Yeah, I would concede that the government did qualify as an expert in drug or interdiction and drug trafficking. Thank you. As far as the Batson challenge, your honor, I don't think the essential facts are in dispute. I think what this court really needs to answer is whether the Supreme Court case of Hernandez v. New York applies to the facts present here. In Hernandez, it was a state criminal case in which the defendant challenged four peremptory strikes of Latino jurors. After the objection, the prosecutor in New York just went straight into providing race neutral reasons. And when it went to the U.S. Supreme Court, they found that the issue was moot as to whether or not the defendant below made a prima facie case. So they just addressed the issue of whether or not the district court, or the court in that matter, properly ruled whether there were to strike race neutral reasons to strike the jurors. That decision in Hernandez has been followed, at least according to the research I did during the brief and this morning, has been followed by every single circuit. There was one exception that the government noted in the brief, and that was U.S. v. Stewart in the 11th Circuit. However, for a good reading of that case, that distinguishable from the case here. And what happened in that case was that the, well, what the court, the 11th Circuit stated in that case was that, I don't know if I find my notes, Your Honor. In Hernandez, they found that the defendant had a race neutral reason without, or excuse me, the state, the prosecutor offered race neutral reasons without any prompting, and the trial court had no occasion to rule. In the Stewart case in the 11th Circuit, they found, the court of appeals found that the trial court had an occasion to rule on the prima facie, the efficiency of the prima facie case. So that's why Stewart was factually distinguishable. There's actually a second case that was just ruled in this month, I think January 7th of 2022 in the Hernandez rule. And so all the circuits in this case, and even this circuit in U.S. v. Harding applied that rule and found that when the government or the prosecutor just goes straight into the reasons for providing the strikes without allowing the court to rule on the prima facie sufficiency, then that issue is moot. The government here tries to make a distinction of that case and more align it with Stewart rather than the other cases. However, I think that is moot, or excuse me, I think that is without a basis. What happened here was that the prosecutor in the case did lodge an objection to the sufficiency of the evidence, but after that she went straight into providing race neutral reasons. So essentially this is a case where basically the government waived their objection. And you could almost call this invited air. Basically the government wants to say, hey, we objected, but then again, we needed to provide race neutral reasons. And that goes into one of the reasons why they don't want this court to follow Hernandez. And that was the second reason cited in their brief. They said Hernandez is factually distinguishable because of that reason. However, and the government tries to assert that there are reasons for doing this. And they say that they try to give a false choice that the government either has to assert the deficiency of the prima facie case, or they have to provide race neutral reasons. It's a false choice altogether. So, Mr. Whiteley, let's assume we agree with you and we then get on to the merits. Did Mr. Hill raise the point that 10 was similarly situated to the near person one and eight before the district court? He did in a roundabout way, your honor. We are not making a similarly situated claim and saying that jurors one and eight should have been stricken. What we're doing or what Mr. Hill did in the brief is do a side-by-side comparison and saying, hey, jurors one and eight were put on the and their answers were virtually the same to the government's questioning on voir dire regarding their assessment of the jurors assessment of cooperating witness testimony. I know you're not suggesting one and eight should have been struck. I think what you're trying to say is the fact that they weren't struck and were of a different race means that was not race neutral. So, my question is, was that raised before the district court? Because if it wasn't, I think U.S. v. Wally says it's waived. It was not, your honor. All Mr. Hill did when he represented himself pro se was just state that juror 10 and juror 15 were African-American and there was no substantial reason to strike them. So, is that enough under U.S. v. Wally? I think it is, your honor. I think what Wally is going towards is the similarly situated claim where they say that jurors one and eight should have been stricken just like juror 10. But in order to establish a Baxton challenge, the evidence that the district court needs to look at is also a side-by-side comparison. So, we're not making a similarly situated claim. We're just saying that when you look at the evidence of jurors one and eight, it's the exact same situation as juror 10. So, it's not a similarly situated claim. All right. What's the basis then for overcoming the government's, assume they gave race-neutral reasons to strike number 10. So, what are the reasons that rebut that then if it's not a similarly situated argument? Well, again, it's the side-by-side comparison, but you can also look at the misrepresentations by the prosecutor in the case. So, when Mr. Hill challenged the striking of 10 and 15, there was a colloquy between the prosecutor and Mr. Hill in the court, and that had to do with whether or not, what the reasons were. And the prosecutor offered that juror 10 was not rehabilitated, but jurors one and eight were. That's not actually correct. Juror 10 was rehabilitated, but the answer was just a simple yes, rather than what jurors one and eight stated, which were, yes, I could consider the cooperating witness testimony and be fair. So, what the prosecutor was trying to say was the brevity or the shortness of the answer from juror 10 wasn't equivalent to what juror one and eight did. So, when the prosecutor offered that statement to the court, it was a misrepresentation because juror 10 actually did say, by answering yes, that she could fairly assess cooperating witness testimony. So, the third factor, again, the court addressed it was that it was procedurally barred. Now, those were the three reasons proffered by the government, but each one of them must fail. So, knowing that, the government in their brief went to say that there was no discriminatory intent in the striking of those. And, again, the prosecutor stated that, here, that she walked away with the impression that juror 10 could not be fair because of the reasons that I just stated. However, none of that information was provided to the district court during trial. These are all after the facts assertions by the government. The only reason that the government stated was simply that juror 10 was not rehabilitated and that they didn't think her answer was sufficient. She never discussed what her impression was. So, I think the court should just strike that portion of the brief and not assert because those were facts that were not in evidence. All that happened afterwards was that Judge White just said that the strike, the Bettson Challenge strike, to juror 10 was overruled. And those are the reasons why. So, with that, if there are any questions, I will reserve my time for rebuttal. Very good. Thank you. Ms. Becker? Your Honor, may it please the court. My name is Tiffany Becker and I represent the United States in this matter and I was the primary trial counsel in this case. I think it is important to note first that there was a full colloquy with the defendant when he waived his right to counsel at trial. So, he was on notice of the necessity of properly preserving errors for appeal and properly making simultaneous objections. In that context, I can set the stage for how this Bettson Challenge came to be. This was the first criminal case post-pandemic. So, we had the Bordier process broken into two phases. One with the first half of the jurors, one with the second half of the jurors. The jurors were wearing masks. The district court was wrestling with a pro se defendant. And the way the strikes happened were that it did not occur, even cause strikes, let alone peremptories, until after the second batch of Bordier had been concluded. At that time, the defendant failed to raise a prima facie showing sufficient to sustain his burden as to making a Bettson Challenge. And the defendant, I think, importantly concedes that, that he did not make a prima facie showing. Then the United States noted that for the record, said that does not sustain a prima facie case and therefore no race neutral reason was required to be proffered. At that point, the court was silent. And you could even see in the transcript at that point, the court reporter started a new paragraph. As the prosecution, I know that we need to flesh out a pellet record. So, I went ahead and proffered a race neutral reason. I gave my impressions of those jurors. There were five jurors who had responded to a question about leeriness of cooperator's testimony. Here, cooperator testimony was absolutely essential to the case. Our cooperator, Aguirre's testimony was extremely important to put flesh on the bones of telephone calls that were intercepted and investigative events that occurred during the course of the case. So, I was honed in on the five jurors who responded positively that they had problems with cooperator testimony. Cooperator, I apologize, the near people one and eight gave a robust explanation of why they were leery about those kinds of testimony coming into the case. They said that that's not right. That's throwing someone else under the bus. They were very interactive with me during that course of that colloquy. And I had good eye contact with them and body language. And I realized that is not within the record. But the reason that is not put on the record is because the defendant didn't properly preserve this challenge. As Judge Grunder noted, the Wally opinion, if he had said jurors one and eight were similarly situated, I would have been able to make a better record as opposed to the record I made because there was no reason to make an additional record because the judge ruled in our favor. But didn't Mr. Hill, being pro se, at least argue that the strike of veneer person 10 was pretextual because there wasn't a follow-up session with veneer 10? That is a good point, Judge Grunder. The follow-up, the points that, I'm sorry, the points that pro se defendant Hill made. If I can follow up, isn't that enough to get him past Wally or not? No, it's not, Your Honor, because he was incorrect as to that point. The defense in this case complains that the government misstated the juror number 10's response. However, before the government said anything, the defendant misremembered and said that juror number 10 had not responded to any question. And then when Judge White, who was taking copious notes and said, no, I have it in my notes that she responded to the cooperator question, Mr. Hill incorrectly stated that she wasn't asked to follow up. It was at that point when I came away with the impression that she indicated she could not be fair to the cooperator. And that was based on all of my impressions about her body language, about how we interacted. Juror number one and eight were very active in their back and forth with me. I believe juror number one wound up being the foreperson of the jury. So at that point, I had no reason to offer more body language or other evidence in terms of my intent of why to strike that juror. I think it's interesting to point to the Hernandez case where the proffered reason for the strikes of the Latino jurors was their bilingualism. Here, that's inherent in their status as Latino jurors. Here, the inability to accept cooperator testimony is clearly not based on race in any way whatsoever. It's simply a race-neutral reason. Now, the record and the transcript revealed that juror number 10 did specifically say, yes, I can be fair. That is a question of an innocent mistake. And I think in the Flowers' opinion, Judge Kavanaugh gives a good summary of what the Lord Iyer process is like. He says, to be sure the back and forth of a Batson hearing can be hurried and prosecutors can make mistakes when providing explanations. That is entirely understandable and mistaken explanations should not be confused with racial discrimination. There is simply no evidence whatsoever of racial discrimination in this case. Mr. Hill attempts to say because there was a clear error regarding what was said as to whether juror number 10 could be fair, that therefore there was clear error here. That's not the question for this court. The question for this White clearly erred in finding that the government's reason for the strike was not motivated primarily by race or substantially by race. And here it was not. And there would be no basis to question that finding. The judge was supposed to and is allowed to take into account all kinds of factors in making that determination. It's a heavily factually a determinative finding. And in that finding, the judge is present in the court, observing the jurors, observing the prosecution. And he was paying close attention as the record reveals in that he was taking notes. He corrected the defendant when the defendant misrepresented the record with respect to juror number 10. And the other factors, there's just simply nothing to indicate that the strike was motivated by race and it was not. In addition, when courts have examined this, for example, in the Flowers case that I just quoted from, the backdrop of that case, a pattern of discrimination had manifested itself over the course of six trials. This is a situation where the district court is owed great deference and for good reason, because they regularly see the litigants, they regularly know the practice and pattern of the U.S. Attorney's Office, of particular prosecutors. There is simply no reason to find that there is clear error in determining that this strike was not racially motivated. Ms. Becker, Mr. Whiteley spent probably the bulk of his argument, I think, discouraging or suggesting we couldn't hold that the failure to make the prima facie case would be sufficient. Could we decide that, and I think he's effectively conceded that he didn't make a prima facie case, could we decide it on that basis alone and be done with it and not go any further than that? I believe under these circumstances, the answer is yes, Your Honor, because in Hernandez, and it's prodigy, and if you look at the Wally case where Judge Colleton carefully notes, look, our case is state, but arguably do not hold that once you offer a race neutral reason, you've waived your right to preserve the lack of a prima facie case. Here, the government specifically did that. The government said this is not a prima facie case, and therefore no race neutral reason is necessary. The court could end its inquiry there because Judge White's ruling does not specify whether it was based on the lack of a prima facie showing or whether a prima facie showing was required or what the basis particularly of his ruling was, nor is that required by him. This court can affirm based on any part of that record, and here it's conceded that the defendant did not make a prima facie showing. What the defendant then attempts to do is find an innocent misstatement of the juror's actual answer and make that into a pretext for discrimination, which it is not. At the time the government made the record about her being much less robust in her rehabilitation on that issue. The defendant did not correct the prosecution. The court did not. Everyone had come away with the impression that she was less rehabilitated on that issue, and therefore his finding is supported whether it simply does not matter. What the defendant tries to do here is read out an element of Batson, and a very important one, where that prima facie is showing. This is similar to the McDonnell-Douglas burden-shifting paradigm, where you must make that prima facie showing. Here, because the government preserved its record but then went ahead and made more of a record, the defendant wants to say that the government waived its right to have the defendant make that showing. Here, under the circumstances of this case, it does not fit within that Hernandez paradigm where the government simply went straight to a race-neutral reason. Here, we mindfully preserve the record, and then we're faced with a situation where the judge didn't immediately rule, so we wanted to flesh out the record and make more of a robust record on why that strike occurred. That is certainly the case, unless the court has any questions on the other issues. I know Judge Loken pointed out properly on the second issue with respect to the dual role testimony that this witness was, in fact, classified as an expert. It is not within the people's, and we have carefully shown that any error remotely that occurred there was harmless. For all of these reasons, because the defendant represented himself, he failed to properly preserve any of those preservations is present here. Because the district court did not have an opportunity to take any corrective action, its attention was not drawn to these arguments, so it couldn't have effectively addressed them. Because those arguments are waived and they fail on their merits, the United States respectfully requests that this court affirm the defendant's convictions. Thank you. Mr. Whiteley, yes, there's a minute for rebuttal. Yes, Your Honor. I'd briefly like to address the prima facie. I would agree with the government that under the McDonnell-Douglas burden-shifting scheme that the defendant's presentation of a prima facie case is important, but clearly there's a dearth of cases out there where the defendant does not either make a prima facie case or doesn't make a sufficient prima facie case, but the courts rule nonetheless that that issue is moot when the prosecutor goes on and provides race-neutral reasons without prompting by the court. That's exactly what happened here. Regardless of whether there was a pause between the paragraphs as noted in the transcript or whether the government went straight into providing race-neutral reasons, the court did not to show that that objection was the court's statement at the end that he was overruling the objection to the strike of juror number 10. We don't know what the basis for that was because the court did not make any findings of fact. All we know is that he struck him. As far as the credibility, the judge being able to assess the credibility of the parties and the prosecutor in knowing what's going on in the courtroom and knowing the personalities, again, we don't know that. There's no evidence in the record that the judge made any finding or overruling Mr. Hill's objection of striking juror number 10 that it was based on him knowing any of that information, so we can't presume that those are the reasons why Judge White overruled the objection. And I have nothing further unless there are any questions, Your Honor. Thank you, counsel. The case has been thoroughly briefed and well-argued, and we will take it under invitement.